## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOHN W. C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22-CV-421-CDL** |
| | ) | |
| **MARTIN O'MALLEY,**[1] | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the decision of the Commissioner and **remands** the case for further proceedings consistent with this Opinion and Order.

### I.    Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines

---

[1]    On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

"disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background

On May 6, 2020, the plaintiff filed an application for Title II disability insurance benefits. (R. 15). The plaintiff alleged that he became disabled on September 15, 2019, after having a stroke, due to a combination of impairments including diabetes, arthritis,

stroke, right-knee injury, bipolar, depression, asthma, high blood pressure, and high cholesterol. (R. 59-60). He was 53 years old on the alleged onset date. (R. 59). The plaintiff has a post-high-school education. Before his alleged disability, he worked as a high-school science teacher, and he worked in retail stores in the meat department and in maintenance. (R. 44-46).

The Commissioner denied the plaintiff's applications at the initial and reconsideration levels. State agency reviewing consultants determined that the plaintiff has severe impairments but that he retains the RFC to perform his past work as a teacher. (R. 59-84). The plaintiff then requested a hearing before an Administrative Law Judge (ALJ), who held a hearing by telephone on February 15, 2022. Testimony was given by the plaintiff and a vocational expert (VE). (*See* R. 34-57).

The plaintiff testified that due to back pain and fatigue resulting from his stroke, he cannot stand or walk for very long. Due to diabetes, he also experiences neuropathy in his legs and feet, and he has arthritis in his feet that makes it hard to walk some days. (R. 49-51). The stroke resulted in reduced function on the left side of his body, so it takes him longer to get things done. He can lift about 5 or 10 pounds due to lower back pain. The plaintiff testified that he is unable to return to teaching because it was "mentally taxing" and "very stressful and . . . being under so much stress affects my depression." (R. 46). He stated that he attempted to work after his stroke in September 2019, but that he started having stroke-like symptoms that triggered a panic attack and seizures. (R. 49).

The plaintiff stated that when he was teaching, he was standing or walking around the classroom for most of the day. He testified that now, his lower back becomes too painful

if he is on his feet for more than 30 minutes. He uses acetaminophen and a heating pad to help with the pain, but he stopped taking opioids out of concern about addiction. He is able to vacuum and take care of other household chores, with breaks, and is independent with self-care. (R. 50-51). The plaintiff further testified that his diabetes has affected his vision. He experiences "floaters" in his vision and has difficulty focusing at times, even with corrective lenses. (R. 48).

On March 16, 2022, the ALJ issued a decision denying disability benefits. (R. 15-34). On August 28, 2022, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-3). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's March 16, 2022 decision under 42 U.S.C. § 405(g).

## III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404,

subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that the plaintiff meets the insured status requirements through December 31, 2015 and has not engaged in substantial gainful activity since his alleged onset date of September 15, 2019. (R. 17). At step two, the ALJ found that the plaintiff has severe impairments of degenerative disc disease, diabetes mellitus, asthma, and obesity. (R. 18). The ALJ found that the plaintiff's status post-cerebral vascular incident with residuals; hypertension; hyperlipidemia; diabetic retinopathy; depression; and bipolar disorder are non-severe. (R. 18-22). At step three, the ALJ found the plaintiff's impairments do not meet or medically equal a Listing, specifically considering Listings 1.15 and 1.16, relating to spinal and joint disorders, Listing 3.03, relating to asthma, and various other Listings relating to endocrine disorders and diabetes. (R. 22). The ALJ also noted the Commissioner's policy for consideration at step three of the combined effect of obesity with other impairments, as set forth in Social Security Ruling (SSR) 19-2p. *Id.*

At step four, the ALJ determined that the plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with the

following limitations:

> The [plaintiff] is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The [plaintiff] can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The [plaintiff] should avoid concentrated exposure to: extreme cold, fumes, odors, dusts, gasses, and respiratory irritants.

(R. 22). In support of this finding, the ALJ discussed the plaintiff's hearing testimony, objective medical evidence, and prior administrative medical findings in the record. Citing the VE's testimony, the ALJ found that the plaintiff is capable of performing his past relevant work as a secondary school teacher. (R. 28). Accordingly, the ALJ found the plaintiff not disabled at step four. *Id*.

## IV.   Discussion

The plaintiff argues that the ALJ failed to (1) properly evaluate the opinion of one of the plaintiff's treating physicians, Daniel Wooster, D.O.; (2) conduct a proper analysis of the plaintiff's subjective statements; (3) properly evaluate the plaintiff's RFC; and (4) make required findings regarding the demands of plaintiff's past relevant work. The Commissioner argues that the ALJ followed the required legal standards and that substantial evidence supports his decision.

As discussed *infra*, the Court reverses the ALJ's decision based on an inadequate evaluation of Dr. Wooster's physical functional assessment. On remand, the ALJ should also reassess the plaintiff's subjective statements in light of the record as a whole. Because the ALJ's RFC and other findings may be affected by the analysis on remand, the Court does not reach the plaintiff's remaining two arguments.

### A.   The ALJ Did Not Adequately Explain His Consideration of Dr. Wooster's Opinion.

The plaintiff saw Dr. Wooster for primary care between 2019 and 2020, beginning prior to his September 2019 stroke. On March 30, 2021, Dr. Wooster completed a physical and mental functional assessment for the plaintiff. (R. 587-590). Dr. Wooster's physical medical source statement indicated that, as a result of his physical impairments, the plaintiff could lift and/or carry ten pounds occasionally and five pounds frequently; stand or walk 30 minutes at a time, for up to four hours in a workday; sit for three hours at a time, totaling three hours in an eight-hour workday; and that he would need to leave early or be absent from work about three days per month. (R. 587-588). As such, based on Dr. Wooster's opinion, the plaintiff would be unable to perform his past relevant work or any work in the national economy. (*See* R. 53-56).[2]

The plaintiff argues that the ALJ failed to properly consider the physical limitations indicated in Dr. Wooster's opinion. The ALJ's decision must articulate how the ALJ considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical

---

[2]   The ALJ's decision stated that Dr. Wooster found the plaintiff was limited to a sedentary exertional capacity, with additional postural, manipulative, and environmental limitations. (*See* R. 27). The plaintiff contends that his impairments preclude him from performing even sedentary work. (*See* Doc. 17 at 9).

opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[3] The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but generally, the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

Here, in explaining his finding that the plaintiff retains the RFC to perform a reduced range of light work, the ALJ found Dr. Wooster's opinion unpersuasive as to physical limitations.[4] (R. 27). Addressing the supportability factor, the ALJ explained that Dr. Wooster's opinion

> is . . . not supported by his July 17, 2020 examination showed that showed the [plaintiff's] gait and station was within normal limits, that his range of motion and stability was within normal limits to his musculoskeletal system, and that his sensation to touch or pin was within normal limits.

(R. 27) (exhibit citations omitted). Regarding consistency, the ALJ found Dr. Wooster's opinion "inconsistent with the June 22, 2020 examination of [Dr. Scott Dull, M.D.] that showed the [plaintiff] had a casual gait that was normal, including stance, stride, and arm swing, a normal range of motion to his musculoskeletal system, normal muscle bulk and tone, and normal light touch sensation to his upper and lower extremities." *Id*.

---

[3]     Supportability refers to the extent that a medical source's opinion is supported by "relevant . . . objective medical evidence and supporting explanations" from the same medical source. 20 C.F.R. § 404.1520c(c)(1). Consistency involves comparing the opinion with evidence "from other medical sources and nonmedical sources." *Id*. § 404.1520c(c)(2).

[4]     Light work generally requires "a good deal of walking or standing"—up to six hours of an eight-hour workday. 20 C.F.R. §§ 404.1567(b) *see* SSR 83-10, 1983 WL 31251, at *6.

The Commissioner argues that the ALJ thus adequately articulated the supportability and consistency factors. Regarding supportability, the Commissioner acknowledges that the ALJ cited only one instance of exam findings inconsistent with Dr. Wooster's functional assessment. However, the Commissioner contends that the ALJ adequately discussed other evidence in the record elsewhere in his decision. For example, the ALJ noted that Dr. Wooster observed normal reflexes, range of motion, sensation, muscle strength, and/or stability on several occasions between October 2019 and April 2021. Relying on *Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013), the Commissioner argues that the ALJ was not required to re-state the medical evidence he relied on in finding Dr. Wooster's opinion was not supportable or consistent with other evidence in the record.

The Court must be able to follow the ALJ's reasoning in order to determine whether the correct legal standards were applied. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Here, in light of the record as a whole, the Court cannot trace the ALJ's reasoning for finding Dr. Wooster's opinion was not supported by his examination findings. Although the ALJ summarized a range of findings throughout Dr. Wooster's treatment of the plaintiff, it is unclear how the ALJ accounted for multiple instances in the record where the plaintiff's gait was observed to be antalgic or abnormal, his range of motion limited, and other abnormal findings.

For example, although the ALJ's decision acknowledged that instances of abnormal or antalgic gait were noted by Dr. Wooster on several occasions between September 2019 and July 2021 (*see* R. 24-27), the ALJ ignored those findings in explaining why he found

Dr. Wooster's opinion unsupported. (*See*, *e.g.*, R. 25 (tenderness observed in right lower extremity on November 26, 2019); R. 26 (abnormal gait, station, range of motion and tenderness in spine on May 4, 2020); R. 27 (abnormal gait, station, and other signs in lower right extremity)). It is not obvious why relatively normal findings on one occasion outweigh the abnormal signs noted on multiple other occasions, during a time period when the plaintiff was seeking treatment for complaints of back pain, injuries from falling, and problems in the lower extremities.

As such, this case is unlike *Best-Willie*, where the record contained "very little objective evidence" to support the claimant's "very severe and extreme alleged functional limitations." 514 F. App'x at 733. Here, the ALJ did not adequately explain why he found Dr. Wooster's opinion unsupported by his own examination findings. Although the record documents a variety of findings, the Court cannot determine how the ALJ assessed the evidence without resorting to speculation. While the Court could conceive of reasons why the ALJ found these instances were outweighed by other evidence in the record, it may evaluate the ALJ's decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Knipe v. Heckler*, 755 F.3d 141, 149 n.16 (10th Cir. 1985) (holding that an ALJ's decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2004) (courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

The ALJ's decision also did not adequately explain why he found Dr. Wooster's opinion inconsistent with the record as a whole. The ALJ did not discuss physical therapy records showing limited range of motion and stiffness in the lower extremities, as well as antalgic gait pattern on some occasions. (*See* R. 597; 654; 746); *see also* R. 747 (assessing functional limitations including lifting, carrying, walking, standing, driving). Many of these findings appear consistent with the limitations opined by Dr. Wooster and thus should have been addressed in the ALJ's decision.[5] *See Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)) (ALJ must consider the entire record and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

The ALJ emphasized the June 2020 findings of Dr. Dull that plaintiff's "casual gait" was normal. But Dr. Dull also reviewed the results of an MRI completed two weeks earlier, which showed facet hypertrophy with mild to moderate spinal and bilateral neuroforaminal stenosis at L2-3, L3-4, L4-5, and L5-S1. On the same date, Dr. Dull ordered x-rays "to evaluate for any dynamic instability" and referred the plaintiff for physical therapy and other conservative treatment, noting that lumbar injections may be considered and that

---

[5]     The ALJ also cited the prior administrative findings made by the reviewing consultants, but those findings are dated June 10, 2020 and February 27, 2021. There were at least two probative pieces of evidence those reviewers did not have an opportunity to review: Dr. Wooster's physical functional assessment, dated March 30, 2021; and Dr. Wooster's examination of plaintiff on July 19, 2021, which found abnormal gait and station, abnormal joints/bones/muscles in lower right extremity. R. 27. Notably, the latter exam includes observations that appear consistent with Dr. Wooster's functional assessment that he made a few months earlier.

"there may be a surgical procedure to help with his symptoms" if other measures failed. (R. 558). The ALJ did not address why Dr. Dull's notation of a "casual gait," alone, outweighed the other concerns evident in his notes. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not properly "cherry-pick" evidence supportive of nondisability while ignoring, without explanation, other evidence in the record); s*ee also Farris v. Berryhill*, CIV-17-255-BMJ, 2018 WL 387807, at *2 (W.D. Okla. Jan. 11, 2018) (explaining that "[p]icking and choosing from the record is an impermissible practice and one necessitating remand").

Remand is therefore required for further consideration of the record and explanation sufficient to enable meaningful review of the ALJ's reasoning. *See Clifton,* 79 F.3d at 1009 (holding that "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion," and thus the ALJ's unexplained conclusion was "beyond meaningful review").

## B.    Subjective Statements

In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact

disabling." *Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[6] In evaluating pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c). Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal citation omitted).

Here, in finding the plaintiff's subjective statements were not entirely consistent with other evidence in the record, the ALJ cited "the June 22, 2020 examination of [Dr.

---

[6] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

Dull] that showed the [plaintiff] had a casual gait that was normal, . . . a normal range of motion to his musculoskeletal system, and . . . light touch sensation was normal to his upper and lower extremities." (R. 23). The ALJ concluded that—although the plaintiff "would undoubtedly have some difficulties"—medical records showed that he was alert, with "normal muscle strength, no sensory deficits, a normal range of motion to his musculoskeletal system, and a casual gait," as well as "normal respiratory effort and normal breath sounds." (R. 27-28 (internal citations omitted)).

The plaintiff argues that the ALJ improperly downplayed or ignored evidence supporting his alleged exertional and visual limitations, including standing and/or walking no more than 30 minutes at a time, and sitting no more than 45 minutes at a time. At the hearing, the ALJ developed VE testimony that these limitations would limit the plaintiff to sedentary work, at the most. An ALJ's evaluation of symptom allegations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). The ALJ is entitled to such deference, so long as the ALJ has explained "the link between the evidence and" the consistency determination. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000).

The Court finds the ALJ's subjective statement analysis problematic for similar reasons to those discussed *supra*, Part IV.A. While the ALJ's decision cited relatively normal physical findings by Dr. Dull on one occasion, as discussed *supra*, the ALJ failed to explain how he weighed other evidence in the record that supports the plaintiff's subjective complaints. It is also unclear why the ALJ emphasized evidence of normal respiratory effort and breath sounds, because the plaintiff testified that his sitting/standing limitations were primarily due to back pain, not respiratory problems. (*See* R. 47).

14

Accordingly, the ALJ's discussion did not adequately explain why the ALJ found the plaintiff's alleged standing and walking limitations inconsistent with the record as a whole. The Commissioner contends that the ALJ's consistency determination is supported by the plaintiff's statements about his activities of daily living, and the fact that he worked in store maintenance for a short period of time after his stroke. But the Court may not rely on reasoning that is not apparent from the ALJ's decision itself. *See Haga*, 482 F.3d 1205, 1207-08.

Because the ALJ's consistency analysis appears to be based on selective portions of the record supportive of disability, while failing to meaningfully address other, significantly probative evidence, on remand the ALJ should further consider and discuss the evaluation of the plaintiff's subjective statements.

## V.    Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not consistent with the applicable legal standards. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

DATED this 5th day of January, 2024.

Christine D. Little
United States Magistrate Judge

15